**BLUMENTHAL, NORDREHAUG & BHOWMIK LLP**
 Norman B. Blumenthal (State Bar #068687)
 Kyle R. Nordrehaug (State Bar #205975)
 Aparajit Bhowmik (State Bar #248066)
 Nicholas J. De Blouw (State Bar #280922)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Website: www.bamlawca.com

**HARDIN & LOTT, APC**
 Ward J. Lott (State Bar #211307)
 James B. Hardin (State Bar #205071)
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Telephone: 949.667.4810
Facsimile: 949-706-6469

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WAGNER, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>           Plaintiff,<br><br>      v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Corporation,<br><br>           Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; and,<br><br>2. VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA"), 15 U.S.C. § 1693 *et seq.*<br><br>**DEMAND FOR A JURY TRIAL** |

1

Plaintiff Mark Wagner ("PLAINTIFF"), an individual on behalf of himself and on behalf of all persons similarly situated alleges the following on information on belief:

## **INTRODUCTION**

1.    This is a class action for unfair, unlawful and deceptive business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), the California Insurance Code, including, but not limited to, Cal. Ins. Code §§ 330-339 *et seq.*, and The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* brought against Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("DEFENDANT").

2.    PLAINTIFF brings this Class Action on behalf of himself and a California class, defined as all California Residents who were solicited by DEFENDANT's direct marketing telephone campaign targeting bank customers to sell them optional insurance and who were charged for such insurance through a reoccurring charge on their bank account or bank-issued card (the "CALIFORNIA CLASS") at any time during the period beginning on the date four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD").

3.    PLAINTIFF also brings this Class Action on behalf of himself and a nationwide class, defined as all persons in the United States whose bank accounts were charged for DEFENDANT's insurance products on a reoccurring basis without proper written authorization for such preauthorized electronic fund transfers (the  "EFTA CLASS") at any time during the period beginning one (1) year prior to the filing of this Complaint and ending on the date as determined by the Court (the "EFTA CLASS PERIOD").

4.    This action is based on Defendant's business pattern and practice of unfairly, unlawfully, and deceptively charging PLAINTIFF and all other CALIFORNIA CLASS and EFTA CLASS Members for insurance they did not authorize, and for other misleading, unlawful and fraudulent business practices as described herein.

///

CLASS ACTION COMPLAINT

## VENUE & JURISDICTION

5.    This Court has original jurisdiction over this class action pursuant to 28 U.S.C. §§ 1331 and 15 U.S.C. § 1693m(g).  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The matter in controversy in this class action exceeds $5,000,000.00 exclusive of interest and costs, and some members of the CALIFORNIA CLASS and EFTA CLASS are citizens of states other than the state in which DEFENDANT is incorporated and have their principal place of business.  In addition, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over PLAINTIFF's state law claims.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) DEFENDANT is subject to personal jurisdiction in this District and therefore resides in this District; (ii) DEFENDANT maintains offices and facilities in this District; and, (iii) DEFENDANT committed the wrongful conduct against members of the CALIFORNIA CLASS and EFTA CLASS, including PLAINTIFF in this District.

## PARTIES

7.    PLAINTIFF is an individual consumer who, at all times material hereto, was a resident of Orange County, California, and as detailed below was subject to the practices at issue in this County.

8.    Defendant National Union Fire Insurance Company of Pittsburgh, PA. is a Corporation with its principal place of business in New York and at all relevant times mentioned herein conducted and continues to conduct substantial and regular business throughout the State of California.

9.    DEFENDANT provides commercial and personal insurance solutions in the United States. DEFENDANT offers accident insurance solutions for business and individual customers. The company was founded in 1901.  DEFENDANT operates as a subsidiary of AIG Property Casualty U.S., Inc.

CLASS ACTION COMPLAINT

## THE CONDUCT

10.     PLAINTIFF's and the CALIFORNIA CLASS and EFTA CLASS Members' claims arise from DEFENDANT's organized scheme to defraud consumers in order to increase revenues. DEFENDANT's employees and agents deceptively, fraudulently, and illegally charged consumers for insurance without obtaining their authorization.  The scheme of adding unwanted insurance typically occurs after DEFENDANT's employees and/or agents are provided contact information and bank account and/or bank card information for PLAINTIFF and other CALIFORNIA CLASS and EFTA CLASS Members from banking institutions in which DEFENDANT has a relationship. Without PLAINTIFF's and other CALIFORNIA CLASS and EFTA CLASS Members' authorization, DEFENDANT then, without the consumers' knowledge, automatically deducts a monthly fee from PLAINTIFF's and other consumers' bank accounts and/or bank cards. DEFENDANT's scheme is based on charging consumers for insurance products en masse through a relationship with banking institutions that provide DEFENDANT with consumers' contact and bank account information without the consumers' knowledge.  This scheme is deceptive, illegal and unfair conduct in violation of the Cal. Ins. Code §§ 330-339 *et seq*. and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

11.     Cal. Ins. Code §§ 330 states that "[n]eglect to communicate that which a party knows, and ought to communicate, is concealment." Further, Cal. Ins. Code §§ 331 states "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Additionally, Cal. Ins. Code §§ 332 reads "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."  Here, DEFENDANT's employees and/or agents concealed the true facts that the DEFENDANT has hidden knowledge of the consumers' bank account and/or bank card information and preauthorization from the banks to charge the consumers for insurance without the consumers' knowledge or authorization. DEFENDANT through its undisclosed relationships with banks, would target unsuspecting consumers based on prior knowledge of which consumers had bank accounts

CLASS ACTION COMPLAINT

with specific institutions and the account numbers.  DEFENDANT would unbeknownst to the consumers obtain the consumers' contact information through the banks along with the account numbers and bank authorization to charge the accounts.  After making direct telemarketing calls from call centers to these bank customers, DEFENDANT after making contact would set up unauthorized charges on the consumers; bank accounts through cryptic descriptions that DEFENDANT knew would not be noticed by a large portion of the consumers targeted by DEFENDANT's scheme. The monthly fee was typically a relatively small charge ($24.90), and in many cases DEFENDANT would get away with charging this unauthorized fee for years on unsuspecting consumers via their bank accounts.  This deceptive practice is highly misleading because a reasonable consumer would assume that if they were going to be charged a reoccurring charge on their bank account for insurance, (a) there would be a conspicuous charge on their account rather than a cryptic description with a series of numbers and letters, (b) they would receive monthly statements from the insurance company confirming payment, (c) they would be presented key documents in advance including a written notice that such charges would ensue, evidence of their written authorization to charge their bank account, and the terms and conditions of insurance, and, (d) they would receive other indicia of a legitimate insurance transaction.  No reasonable consumer would expect their bank account to be accessed directly by DEFENDANT after a telemarketing call from an insurance company without giving express permission to charge their bank account or even providing DEFENDANT with their bank account information. Because a reasonable consumer would never expect these bank account charges to ensue, they were at a very high risk for not noticing such charges for a significant time period simply as a result of picking up the phone.  Thus, DEFENDANT would profit via its deceptive conduct.   DEFENDANT knew all of these circumstances in advance, knew that many other consumers had complained about these unfair practices, and had even paid millions of dollars in penalties to state insurance agencies for similar tactics in the past.  Yet, DEFENDANT continued this unscrupulous conduct.  DEFENDANT failed to act in good faith and cheated the competition who followed the law.

12.     In addition, DEFENDANT also violates The Electronic Funds Transfer Act ("EFTA"),

15 U.S.C. § 1693 *et seq.* by initiating electronic fund transfers without *written* authorization from PLAINTIFF and other EFTA CLASS Members. The EFTA provides a basic framework establishing, the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. 15 U.S.C. § 1693(b). The primary objective or goal of the EFTA is the provision of individual consumer rights. 15 U.S.C. § 1693(b). The EFTA mandates that any preauthorized electronic fund transfer must be "authorized by the consumer in *writing*." 15 U.S.C. § 1693e; see 12 C.F.R. § 205.10. Further, "a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a) The statute defines a preauthorized electronic fund transfer as "an electronic fund transfer authorized in advance to recur at substantially regular intervals" 15 U.S.C. § 1693a(9). An electronic fund transfer is "unauthorized" if it is a "transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(11). Section 1693m provides a cause of action against any person who fails to comply with Section 1693e with respect to any consumer. 15 U.S.C. §1693m(a).

13. Specifically as to PLAINTIFF, after reviewing his checking account records sometime in 2017, PLAINTIFF noticed recurring monthly charges on his account labeled "Nuf Ipp Insr 800-572-5848 8379 4813986200" for the same amount each month of $24.90, the last unauthorized charge occurring on February 2, 2017. After contacting his banking institution, Wells Fargo, in or around March of 2017 regarding the unauthorized charges, PLAINTIFF was told that DEFENDANT claimed to have permission to enroll PLAINTIFF in the insurance plan and deduct a charge every month from his bank account since *2010*. PLAINTIFF, however, never authorized DEFENDANT to initiate the monthly electronic fund transfers for insurance that he did not use. After PLAINTIFF's banking institution completed their inquiry of the unauthorized charges, PLAINTIFF's bank credited his account in March of 2017, but would only do so for the sixty (60) days preceding the unauthorized payments. PLAINTIFF was charged the monthly unauthorized amount of $24.90 by DEFENDANT for nearly *seven (7) years*. The amount was taken without any authorization from PLAINTIFF. This conduct not only violates California's Unfair Competition

Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* as DEFENDANT's conduct was unfair, unlawful and deceptive, but DEFENDANT also violated the EFTA as any preauthorized electronic fund transfer must be "authorized by the consumer in *writing*." 15 U.S.C. § 1693e; see 12 C.F.R. § 205.10. PLAINTIFF never authorized DEFENDANT to charge him and transfer funds from his bank account. The ill gotten gains received by DEFENDANT was achieved through deceptive, unfair and unlawful acts that are part of DEFENDANT's business model for profit that has been ongoing for years.

14. DEFENDANT and its parent companies have been the subject of considerable litigation regarding the deceptive, unfair and unlawful practice described herein. Specifically, DEFENDANT was sued by the Ohio Department of Insurance over its practice of enrolling consumers in insurance products sold through DEFENDANT's direct marketing business unit to customers of certain banking institutions. The Ohio Department of Insurance alleged that in certain instances, coverage under policies that were filed, approved, issued and used as blanket accident/sickness policies were marketed to individuals. The Ohio Department of Insurance alleged that this practice constituted a violation of its laws concerning filing and approval of policies. On October 15, 2012, the Ohio Department of Insurance and DEFENDANT entered into a regulatory settlement agreement and DEFENDANT agreed to pay up tp a maximum administrative penalty of $51,000,000.00. See Regulatory Settlement Agreement, available at, www.cbs.state.or.us/ins/admin_actions/actions_2012/insurer_2012/marketplace_2012/12-10-003-rsa.pdf. The practices in which the above settlement challenged bears a striking resemblance to DEFENDANT's deceptive practice alleged herein that directly marketed consumers who were clients of certain banking institutions using the same scam tactics.

15. This small monthly amounts unlawfully charged to PLAINTIFF's and other CALIFORNIA CLASS and EFTA CLASS Members' bank accounts and/or bank cards cleverly concealed significant cash payments over a period of years from many consumers. DEFENDANT, over at least the last six years, implemented a systematic scheme through which its employees and/or agents unlawfully, unfairly, and deceptively charged PLAINTIFF and other CALIFORNIA CLASS

CLASS ACTION COMPLAINT

and EFTA CLASS Members for insurance that these consumers never authorized and initiated electronic fund transfers from their bank accounts without their authorization. This is not an isolated incident with one consumer, but a pattern of conduct that has occurred to numerous consumers across the United States, which have been generally reported to their banking institutions and placed on online review platforms. This practice has allowed DEFENDANT to pocket millions in insurance premiums for unnecessary insurance coverage.

16.    DEFENDANT is aware these practices are on-going and prevalent, as similar complaints have been lodged on the internet regarding consumers being charged for  insurance products by DEFENDANT they never agreed to purchase.  One individual on a message board for online complaints entitled http://800notes.com/Phone.aspx/1-800-572-5848 stated "[w]ell I think I have it worst than any of you on this post. I too had got a call from 800-572-5848 (Adam) saying they were some National Union Fire Insurance Co. affiliated with Wachovia Bank and offering a million dollar policy. I asked to receive info on it and I did along with a gas voucher. I didn't feel like I needed it and just threw it away. Little did I know if you don't tell them you don't want it in 30 dys. a charge of $24.90 is automatically debited from your account every month. They activated me an account and been taking money since Jan. 2010 and I had no idea since I hardly ever look at my statements. I called several times and even wrote their corporate office about this and closing my account. They lied and said it was handled and later more money was taken. These people are running a scam!!! I never signed with them but they were allowed to take money straight from my account." Another poster to the same message board claimed "[a] few months ago, I was offered the supplementary health insurance, in behalf of Wells Fargo, when in fact it's AIG or one of their subsidiaries. The agreement was for me to review the document and cancel in 30 days if I decide not to go about it. I did not receive any doc from AIG, and then received a charge of $24.90 on my account."  And yet another complainant stated "On receiving a statement indicating an unknown charge we inquired by calling 800-572-5848 (in statement info). My wife had received a call offering med insurance and implying Wells Fargo conn[e]ction.  She requested written materials to review, as that our policy is NOT to pu[r]chase anything online that we did originate!  NO printed

info appeared!  Apparently the written material req[u]ires a cancellation.  An una[u]thorized charge o[f] $24.90 was made to our account.  When we called it was claimed that the material was mailed and a cancellation was not received.  Could this be a commis[s]ion "skimming" scam inside the telecaller business!!!"

17.    The foregoing are but selected complaints in only one online forum, but the problem is so pervasive that several other online boards with similar experiences exist.  Another message board on yelp at https://www.yelp.com/biz/national-union-fire-insurance-pittsburgh includes this review from a consumer on 1/23/2017, "Scam. [DEFENDANT] has been taking money out of my elderly parents account for almost 5 years. 3 small increments that they never noticed. I discovered it today after helping them review their statement. A quick search of the internet will show you that there are tons of complaints about the same issue."  Another Yelp reviewer had this to say on 5/18/2015, "[t]HIS IS A SCAM.  I was getting a recurring charge of 19.90 on my bank statement under NUF IPP INSR 800-572-5848.  I never ask for it and the company said that they work with Wells Fargo. There has been many State insurance departments that have filled claims against this company."  Another person complained on 7/29/2013 "[w]ells Fargo had a charge on my credit cart with the name Wells Fargo on it that I thought was the monthly fee for holding the credit card of $24.90 / mo. When I recently paid off and attempted to cancel my credit card, I was told this monthly charge was actually an insurance plan from "Wells Fargo National Union Fire Insurance Company" which was never authorized, needed or even used."

18.    By reason of this uniform conduct applicable to PLAINTIFF and all CALIFORNIA CLASS and EFTA CLASS Members, DEFENDANT committed acts of unfair competition in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), by engaging in an unlawful, deceptive and/or unfair practice that injured PLAINTIFF and CALIFORNIA CLASS Members in amounts to be proven at trial.  DEFENDANT must be ordered to reimburse these amounts to PLAINTIFF and other CALIFORNIA CLASS and EFTA CLASS Members.  PLAINTIFF was personally victimized by DEFENDANT's deceptive practice and lost money as a result of the unauthorized electronic fund transfers from his bank account for insurance.

## THE CALIFORNIA CLASS ALLEGATIONS

19.    PLAINTIFF brings the First Cause of Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), on behalf of the CALIFORNIA CLASS as described above during the CALIFORNIA CLASS PERIOD as described above.

20.    To the extent equitable tolling operates to toll claims by the CALIFORNIA CLASS against DEFENDANT, the statute of limitations period should be adjusted accordingly.

21.    The CALIFORNIA CLASS is so numerous that joinder of all CALIFORNIA CLASS Members is impracticable.

22.    Common questions of law and fact exist as to members of the CALIFORNIA CLASS, including, but not limited, to the following:

    (a)    Whether DEFENDANT charges CALIFORNIA CLASS Members for insurance products they never authorized;

    (b)    Whether DEFENDANT falsely and deceptively conceals the fact that CALIFORNIA CLASS Members will be charged monthly for insurance products unless they affirmatively exclude themselves from DEFENDANT's automatic charge program;

    (c)    Whether DEFENDANT had hidden knowledge of consumers' bank account and/or bank card numbers and concealed the automatic charges to CALIFORNIA CLASS Members bank accounts and/or bank cards;

    (d)    Whether DEFENDANT acts and practices in connection with the sale of the insurance products or services detailed herein were deceptive trade practices within the meaning of the California Business & Professions Code, Section 17200, *et seq*.;

    (e)    Whether DEFENDANT's acts and practices in connection with the promotion and sale of these products and/or services unjustly enrich DEFENDANT at the expense of, and to the detriment of, PLAINTIFF and other CALIFORNIA CLASS Members;

CLASS ACTION COMPLAINT

(f)     Whether DEFENDANT's conduct as set forth herein injured consumers and, if so, the extent of such injury; and,

(g)     The proper form of injunctive and declaratory relief.

23.     This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

(a)     The persons who comprise the CALIFORNIA CLASS are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)     Nearly all factual, legal, statutory, and declaratory relief issues that are raised in this Complaint are common to the CALIFORNIA CLASS will apply uniformly to every member of the CALIFORNIA CLASS;

(c)     The claims of the representative PLAINTIFF are typical of the claims of each member of the CALIFORNIA CLASS.  PLAINTIFF and the members of the CALIFORNIA CLASS were and are similarly or identically harmed by the same unlawful, deceptive, unfair and pervasive pattern of misconduct engaged in by DEFENDANT; and,

(d)     The representative PLAINTIFF will fairly and adequately represent and protect the interest of the CALIFORNIA CLASS, and has retained counsel who are competent and experienced in Class Action litigation.  There are no material conflicts between the claims of the representative PLAINTIFF and the members of the CALIFORNIA CLASS that would make class certification inappropriate.  Counsel for the CALIFORNIA CLASS will vigorously assert the claims of all persons in the CALIFORNIA CLASS.

24.     In addition to meeting the statutory prerequisites to a Class Action, this Action is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

(a)     Without class certification and determination of declaratory, statutory and other legal questions within the class format, prosecution of separate actions

CLASS ACTION COMPLAINT

by individual members of the CALIFORNIA CLASS will create the risk of:

1)      Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA CLASS which would establish incompatible standards of conduct for the parties opposing the CLASS; and/or,

2)      Adjudication with respect to individual members of the CALIFORNIA CLASS which would as a practical matter be dispositive of interests of the other members not party to the adjudication or substantially impair or impede their ability to protect their interests.

(b)   The parties opposing the CALIFORNIA CLASS have acted or refused to act on grounds generally applicable to the CLASS, making appropriate class-wide relief with respect to the CALIFORNIA CLASS as a whole;

(c)   Common questions of law and fact exist as to the members of the CALIFORNIA CLASS, with respect to the practices and violations of California law as listed above, and predominate over any question affecting only individual CALIFORNIA CLASS Members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)      The interests of the members of the CALIFORNIA CLASS in individually controlling the prosecution or defense of separate actions in that the substantial expense of individual actions will be avoided to recover the relatively small amount of economic losses sustained by the individual CALIFORNIA CLASS Members when compared to the substantial expense and burden of individual prosecution of this litigation;

2)      Class certification will obviate the need for unduly duplicative litigation that would create the risk of:

CLASS ACTION COMPLAINT

A.    Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA CLASS, which would establish incompatible standards of conduct for DEFENDANT; and/or,

B.    Adjudications with respect to individual members of the CALIFORNIA CLASS would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests; and,

3)    A Class Action is superior to other available methods for the fair and efficient adjudication of this litigation because class treatment will obviate the need for unduly and unnecessary duplicative litigation that is likely to result in the absence of certification of this Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3).

25.    This Court should permit this Action to be maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), because:

(a)    The questions of law and fact common to the CALIFORNIA CLASS predominate over any question affecting only individual CALIFORNIA CLASS Members because DEFENDANT's practices were uniform and systematically applied with respect to the CALIFORNIA CLASS;

(b)    The members of the CALIFORNIA CLASS are so numerous that it is impractical to bring all members of the CALIFORNIA CLASS before the Court;

(d)    PLAINTIFF, and the other CALIFORNIA CLASS Members, will not be able to obtain effective and economic legal redress unless the action is maintained as a Class Action;

(e)    There is a community of interest in obtaining appropriate legal and equitable relief for the acts of statutory violations and other improprieties, and in

obtaining adequate compensation for the injuries which DEFENDANT's actions have inflicted upon the CALIFORNIA CLASS;

(f)     There is a community of interest in ensuring that the combined assets of DEFENDANT are sufficient to adequately compensate the members of the CALIFORNIA CLASS for the injuries sustained;

(g)     DEFENDANT has acted or refused to act on grounds generally applicable to the CALIFORNIA CLASS, thereby making final class-wide relief appropriate with respect to the CALIFORNIA CLASS as a whole;

(h)     The members of the CALIFORNIA CLASS are readily ascertainable from the business records of DEFENDANT; and,

(i)     Class treatment provides manageable judicial treatment calculated to bring an efficient and rapid conclusion to all litigation of all claims arising out of the conduct of DEFENDANT as to the members of the CALIFORNIA CLASS.

26.     PLAINTIFF will seek leave to amend the Complaint to include any additional subject vehicles that are similarly situated when they have been identified.

## THE EFTA CLASS ALLEGATIONS

27.     PLAINTIFF brings the Second Cause of Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), on behalf of the EFTA CLASS as described above during the EFTA CLASS PERIOD as described above.

28.     To the extent equitable tolling operates to toll claims by the EFTA CLASS against DEFENDANT, the EFTA CLASS PERIOD should be adjusted accordingly.

29.     The EFTA CLASS is so numerous that joinder of all EFTA CLASS Members is impracticable.

30.     DEFENDANT uniformly violated the rights of the EFTA CLASS by:

(a)     Violating The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* As a result of Initiating electronic fund transfers without *written*

authorization from PLAINTIFF and other EFTA CLASS Members. DEFENDANT did so intentionally, knowingly, and wilfully.

31.    Common questions of law and fact exist as to members of the EFTA CLASS, including, but not limited, to the following:

(a)    Whether DEFENDANT charges EFTA CLASS Members for insurance products they never authorized;

(b)    Whether DEFENDANT falsely and deceptively concealed the fact that DEFENDANT had the EFTA CLASS Members' bank account and/or bank card number sand had preauthorization from the bank to charge these accounts and that EFTA CLASS Members will be charged monthly for insurance products unless they affirmatively excluded themselves from DEFENDANT's automatic charge program;

(c)    Whether DEFENDANT acts and practices in connection with the sale of the insurance products or services detailed herein were violations of The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*;

(d)    Whether DEFENDANT's conduct as set forth herein injured consumers and, if so, the extent of such injury; and,

(e)    The proper form of injunctive and declaratory relief.

32.    This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

(a)    The persons who comprise the EFTA CLASS are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)    Nearly all factual, legal, statutory, and declaratory relief issues that are raised in this Complaint are common to the EFTA CLASS will apply uniformly to every member of the EFTA CLASS;

(c)    The claims of the representative PLAINTIFF are typical of the claims of each

14

member of the EFTA CLASS.  PLAINTIFF and the members of the EFTA CLASS were and are similarly or identically harmed by the same unlawful, deceptive, unfair and pervasive pattern of misconduct engaged in by DEFENDANT; and,

(d)   The representative PLAINTIFF will fairly and adequately represent and protect the interest of the EFTA CLASS, and has retained counsel who are competent and experienced in Class Action litigation.  There are no material conflicts between the claims of the representative PLAINTIFF and the members of the EFTA CLASS that would make class certification inappropriate.  Counsel for the EFTA CLASS will vigorously assert the claims of all persons in the EFTA CLASS.

33.   In addition to meeting the statutory prerequisites to a Class Action, this Action is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

(a)   Without class certification and determination of declaratory, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the EFTA CLASS will create the risk of:

1)   Inconsistent or varying adjudications with respect to individual members of the EFTA CLASS which would establish incompatible standards of conduct for the parties opposing the EFTA CLASS; and/or,

2)   Adjudication with respect to individual members of the EFTA CLASS which would as a practical matter be dispositive of interests of the other members not party to the adjudication or substantially impair or impede their ability to protect their interests.

(b)   The parties opposing the EFTA CLASS have acted or refused to act on grounds generally applicable to the CLASS, making appropriate class-wide relief with respect to the EFTA CLASS as a whole;

(c)    Common questions of law and fact exist as to the members of the EFTA CLASS, with respect to the practices and violations of California law as listed above, and predominate over any question affecting only individual EFTA CLASS Members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)    The interests of the members of the EFTA CLASS in individually controlling the prosecution or defense of separate actions in that the substantial expense of individual actions will be avoided to recover the relatively small amount of economic losses sustained by the individual EFTA CLASS Members when compared to the substantial expense and burden of individual prosecution of this litigation;

2)    Class certification will obviate the need for unduly duplicative litigation that would create the risk of:

A.    Inconsistent or varying adjudications with respect to individual members of the EFTA CLASS, which would establish incompatible standards of conduct for DEFENDANT; and/or,

B.    Adjudications with respect to individual members of the EFTA CLASS would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests; and,

3)    A Class Action is superior to other available methods for the fair and efficient adjudication of this litigation because class treatment will obviate the need for unduly and unnecessary duplicative litigation that is likely to result in the absence of certification of this Action pursuant to  Fed. R. Civ. Proc. 23(b)(2) and/or (3).

CLASS ACTION COMPLAINT

34.   This Court should permit this Action to be maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), because:

(a)   The questions of law and fact common to the EFTA CLASS predominate over any question affecting only individual EFTA CLASS Members because DEFENDANT's practices were uniform and systematically applied with respect to the EFTA CLASS;

(b)   The members of the EFTA CLASS are so numerous that it is impractical to bring all members of the EFTA CLASS before the Court;

(d)   PLAINTIFF, and the other EFTA CLASS Members, will not be able to obtain effective and economic legal redress unless the action is maintained as a Class Action;

(e)   There is a community of interest in obtaining appropriate legal and equitable relief for the acts of statutory violations and other improprieties, and in obtaining adequate compensation for the injuries which DEFENDANT's actions have inflicted upon the EFTA CLASS;

(f)   There is a community of interest in ensuring that the combined assets of DEFENDANT are sufficient to adequately compensate the members of the EFTA CLASS for the injuries sustained;

(g)   DEFENDANT has acted or refused to act on grounds generally applicable to the EFTA CLASS, thereby making final class-wide relief appropriate with respect to the EFTA CLASS as a whole;

(h)   The members of the EFTA CLASS are readily ascertainable from the business records of DEFENDANT; and,

(i)   Class treatment provides manageable judicial treatment calculated to bring an efficient and rapid conclusion to all litigation of all claims arising out of the conduct of DEFENDANT as to the members of the EFTA CLASS.

35.   PLAINTIFF will seek leave to amend the Complaint to include any additional subject

CLASS ACTION COMPLAINT

vehicles that are similarly situated when they have been identified.

## FIRST CAUSE OF ACTION

### For Unlawful Business Practices

### [Cal. Bus. And Prof. Code §§ 17200, *et seq.*]

### (By PLAINTIFF and the CALIFORNIA CLASS and Against All Defendants)

36.    PLAINTIFF, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, the prior paragraphs of this Complaint.

37.    DEFENDANT is a "person" as that term is defined under Cal. Bus. and Prof. Code § 17021.

38.    California Business & Professions Code §§ 17200, *et seq.* (the "UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.  Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code § 17203.

39.    By the conduct alleged herein, DEFENDANT has engaged and continues to engage in a business practice which violated California law, including but not limited to,  Cal. Ins. Code §§ 330-339 *et seq.*  DEFENDANT's conduct as described herein also violates The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* for which this Court should issue declaratory and other equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 as may be necessary to prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.  The conduct violates many common law standards including conversion, as well as criminal statutes including Penal Code § 484(a).  Further, the conduct violates the elements of California common law conversion.

40.     By the conduct alleged herein, DEFENDANT's practices were unlawful, deceptive and unfair in that these practices violated public policy, were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and are without valid justification or utility for which this Court should issue equitable and injunctive relief pursuant to Section 17203 of the California Business & Professions Code, including restitution of monies wrongfully deducted from consumers' bank accounts and/or bank cards.  As described herein, DEFENDANT engaged in the unfair and deceptive business practice of enrolling consumers in DEFENDANT's insurance program and then concealing the fact that their bank accounts would be charged automatically each month for insurance products.

41.     DEFENDANT's business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State.  Further any justifications for DEFENDANT's wrongful conduct are outweighed by the adverse effects of such conduct.  Thus, DEFENDANT engaged in unfair business practices prohibited by the California Business & Professions Code § 17200.

42.     Section 17200 also prohibits any fraudulent business act or practice.  DEFENDANT violated this prong of the UCL by directing their employees and/or agents to disseminate misleading and partial statements about DEFENDANT's insurance program that had a tendency to mislead consumers.  Further, DEFENDANT violated this prong of the UCL by concealing the fact that consumers would be enrolled in DEFENDANT's insurance program that would automatically deduct money from their bank account and/or bank card each month.

43.     DEFENDANT's conduct caused and continues to cause substantial injury to PLAINTIFF and other consumers.  PLAINTIFF has suffered injury in fact and lost money as a result of DEFENDANT's unfair, deceptive and unlawful conduct.

44     PLAINTIFF and the other members of the CALIFORNIA CLASS are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which DEFENDANT has acquired, or of which PLAINTIFF and the other members of the CALIFORNIA CLASS have been deprived, by means of the above described unlawful and unfair business

1    practices.

2        45.    PLAINTIFF and the other members of the CALIFORNIA CLASS are further entitled

3    to, and do, seek a declaration that the described business practices are unlawful, unfair and

4    deceptive, and that injunctive relief should be issued restraining DEFENDANT from engaging in

5    any unlawful and unfair business practices in the future.

6

7                            **SECOND CAUSE OF ACTION**

8                  **For Violations of the Electronic Funds Transfer Act**

9                        **[15 U.S.C. § 1693 *et seq*.]**

10           **(By PLAINTIFF and the EFTA CLASS and Against All Defendants)**

11       46.    PLAINTIFF, and the other members of the EFTA CLASS, reallege and incorporate

12   by this reference, as though fully set forth herein, the prior paragraphs of this Complaint.

13       47.    DEFENDANT violated the EFTA, specifically 15 U.S.C. § 1693a(11) by initiating

14   electronic fund transfers for unauthorized insurance products from the bank accounts fo PLAINTIFF

15   and other EFTA CLASS Members on a recurring basis, at substantially regular intervals, without

16   first obtaining knowing, written authorization from them.  DEFENDANT further failed to present

17   the written authorization to EFTA Class Members when made as required by law, in furtherance of

18   its fraudulent scheme.

19       48.    By initiating the electronic fund transfers with PLAINTIFF's and EFTA CLASS

20   Members' authorization, DEFENDANT violated and continues to violate 15 U.S.C. 1693e.  As a

21   direct and proximate result of DEFENDANT's unlawful acts and conduct, PLAINTIFF and EFTA

22   CLASS Members were deprived of the use of their money that was charged and illegally transferred

23   from their bank account by DEFENDANT for DEFENDANT's sole benefit.

24       49.    Pursuant to 15 U.S.C. § 1693m. PLAINTIFF, on behalf of himself and the EFTA

25   CLASS, seeks a Court order for actual and statutory damages to be determined by the Court,

26   injunctive relief, as well as reasonable attorneys' fees and the cost of thsi action.

27

28

CLASS ACTION COMPLAINT

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against each Defendant, jointly and severally, as follows:

1.    On behalf of the CALIFORNIA CLASS:

    A)    That the Court certify the First Cause of Action asserted by the CALIFORNIA CLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3);

    B)    An order temporarily, preliminarily and permanently enjoining and restraining DEFENDANT from engaging in similar unlawful conduct as set forth herein; and,

    C)    Restitutionary disgorgement of DEFENDANT's ill-gotten gains into a fluid fund for restitution of the sums incidental to DEFENDANT's violations due to PLAINTIFF and to the other members of the CALIFORNIA CLASS.

2.    On Behalf of the EFTA CLASS:

    A)    That the Court certify the Second Cause of Action asserted by the EFTA CLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3);

    B)    For compensatory damages, including actual and statutory damages, arising from DEFENDANT's wrongful and illegal conduct; and,

    C)    For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action.

3.    On all claims:

    A)    An award of interest, including prejudgment interest at the legal rate; and,

    B)    Such other and further relief as the Court deems just and equitable.


Dated:   June 15, 2017                **BLUMENTHAL, NORDREHAUG & BHOWMIK LLP**

                                  By:   */s/ Norman B. Blumenthal*
                                        Norman B. Blumenthal
                                        Attorneys for Plaintiff

CLASS ACTION COMPLAINT

1

2

## **DEMAND FOR A JURY TRIAL**

3

PLAINTIFF demands a jury trial on issues triable to a jury.

4

5

Dated:   June 15, 2017                **BLUMENTHAL, NORDREHAUG & BHOWMIK LLP**

6

By: ___*/s/ Norman B. Blumenthal*_____

7

Norman B. Blumenthal
Attorneys for Plaintiff

8

9

10

11

12

13

K:\D\Dropbox\Pending Litigation\Nationail Union Fire Insurance Company - Wagner\p-complaint-FINAL.wpd

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT